Please be seated. I will call our next case for the morning, if we still are. That's a daylight saving there, but I guess we're still in the morning current time. This is XR Construction v. Hall Palm Springs. Mr. Phillips, I think you have the lead. Good morning, Your Honors. May it please the Court. The appellees here seek to avoid appellate review of the bankruptcy court's decision about the credit bid order and the sale order on the basis of Section 363M of the Bankruptcy Code for good-faith purchasers. But, HPS failed to carry its burden under either of this court's recognized definitions of good faith for purposes of 363M to prove it's entitled to be declared a good-faith purchaser. First, it's undisputed that HPS was aware of adverse claims that the property is not properly part of the bankruptcy estate. The dispute is whether that counts as an adverse claim, but there's no dispute that they were aware of those claims. And second, HPS engaged in conduct related to the pre-petition, the bankruptcy proceeding, the bidding process that virtually guaranteed that HPS would be the only successful bidder on the property, and therefore they're not entitled to good-faith purchaser status. Therefore, the district court erred in dismissing our appeal of the credit bid order and the sale order on the basis of Section 363M, and the court should reverse that and remand it to the district court to consider the merits of our appeal on those two issues. I'm going to start first. Sorry. No, you're right. I did pull in my breath because maybe as a threshold question, the goal of the litigation, your litigation in bankruptcy court, and the goal of your simultaneous litigation in California courts is what? Not to obtain the property? I think the goal is… Or it is just be paid in full? Your goals are a little bit different. In California, which was filed pre-petition, that one was to basically declare that our lien was superior under California law and to foreclose on the property in order to satisfy it. Who are the parties in that case, California? The original property owner and other lien holders. Palm Springs or whatever the name of it was? And Hall Palm Springs. I'm sorry. There's still an existing corporation, or at least it still is represented, Palm Springs, whoever was building it? RE Palm Springs, the original property owner, still exists and is still… So your client versus Palm Springs or maybe some other people is the California litigation? Yes, the California litigation, the original owner, the HPS, the purchaser here, and there were also other lien holders in California that sued. Was that formally stayed during the bankruptcy? Yes. In fact, the first indication we had of the transfer and the bankruptcy was when they came to the California court with the notice of stay because of the bankruptcy proceedings. Then the goal of the adversary proceeding in the bankruptcy court is to unwind the original transfer as a fraudulent transfer from the prior owner, the original owner, to the debtor in this case because that transfer left the debtor, the original owner, I apologize, left the original owner with all of the liabilities but without the primary asset. And so our argument is in the adversary proceeding that that's a fraudulent transfer. It should be unwound and therefore the property is not even properly part of the bankruptcy estate. It doesn't, it shouldn't belong to the debtor here. It should belong to the original owner. The district court did have three days of hearing into sort of what I think of as the fundamental integrity issue. There were… It seemed to say, I mean, correct me at the end if I'm wrong, but it seemed to say this is a pandemic unique urgency. Everything has been disclosed to me, the bankruptcy judge, and value was given, 50% of future. So given the witnesses and that sort of constellation, am I correct that the focus more here is that the district court would have erred as to their good faith purchaser status more because of the adverse claim element less because of the fraudulent collusion element? So to be clear, the district court didn't hold any hearings. I'm sorry, the bankruptcy court, I know. I just want the record to be clear. Yeah, you're right. The bankruptcy court did hold hearings. The bankruptcy judge did not at all address that first definition of good faith status. The knowledge of adverse claims was not, the bankruptcy court didn't talk about that at all. Yes, the bankruptcy court held hearings as to the conduct issues. The parties referred to it that. I think our argument there is that the bankruptcy court fundamentally erred in the way it considered those issues because when you look at all of those issues taken as a whole, it makes it very clear that HPS controlled this process from beginning to end with the purpose of obtaining this property without any lien. But our standard review would likely be clear error, although the brief debates that, instead of asking that, it's unfair for me to start and then tell you not to answer. But the adverse claim portion, the statute doesn't define what is an adverse claim. The court seemed to have. How broad is your definition of adversity? So I think for adverse claim, one of the fundamental things there is it's got to be something this court has said in TMT. It needs to go beyond simply I object to the sale. And we agree, if it was that, then everything would be an adverse claim. But here we think we do have an adverse claim because what we're saying is this can't even be sold in the bankruptcy process in the first place. This claim is not just trying to complain about the sale order or the credit bid order. It is the claim to remove the property from the bankruptcy estate in its entirety. One case we've cited on that is the In Re Pop decision from the Ninth Circuit BAP where they talked about the fact that a claim that the property was not properly in the bankruptcy estate was sufficient. And we think that that is enough to make it adverse here. And it's not so broad that it would make it so that every time somebody is complaining, you would get out of good faith status. Let me ask you about the California case. I mean what worries me about your position separate from what you just said is the mere fact that your mechanics lien or whatever it's called would be potentially superior to the deed of trust. That seems to me to be a priority issue that would be existing for a lot of liens. Your judgment credit are unrelated to the construction. You have a lien resulting from that. You run around California and other places trying to serve it and collect. Would you put your California litigation separate from the – because, I mean, maybe that is also an effort to set aside this initial transfer by Palm Springs. But I think you're just looking for a priority decision in your California litigation. Isn't it legitimate to say it cannot just be a lien that might have priority over another lien? Because there are an awful lot of liens out there, and that's the purpose of 363 is to resolve all that. I think if it were merely a lien claim, then – Regardless of who has priority. If that were the sole purpose of the litigation, I think that might be a more difficult question as to whether that is an adverse claim. One of the issues, of course, in the California case is we filed it for that purpose, to foreclose on the property, and didn't get any further than that initial stuff because then they had this transfer and the bankruptcy, and they did all of that. We had no idea that it happened. So when the bankruptcy was filed and these other issues came to the fore about could this transfer really even happen, we didn't know about that until the California case got stayed. That is when we became aware of the transfer and of the other things that had happened. What were these next steps? Let's say none of this other had happened and your California case would have proceeded. What would have been the next step? Let's say you won. Big disagreement on that side, seeing. But let's say you won and you did have priority. What would you then have had to do? In the California case? In the California case, there's no bankruptcy going on, Palm Springs is sitting there for whatever reason, not doing anything with the hotel, and you have a priority over the deed of trust. Don't you then have to take further litigation action? At that point, we, I think, would have been able to foreclose under the California case. But again, in this case, the other thing that's happened is the transfer. Okay, but all I'm trying to get is I really do see California as not much help for you in that litigation. And I'm not asking you to concede anything, but I'm just pursuing that a little bit with you. I fully understand. And I think one of the things that would have to happen if we were to prevail on these issues is I think the first thing that would be resolved is the adversary proceeding in the Northern District, in which we have asked for that transfer, the original transfer to the debtor, to be unwound as a fraudulent transfer. Why did that help the lender, what's my original name here? HPS. Why did that transfer put them in a better position as opposed to actually foreclosing on the property? It gave them much more control. At that point, they owned, at the end of that transfer, which, by the way, did not reduce the debt that was owed, they owned the debt and they owned the property securing that debt, effectively, because it was owned through their affiliate. And so at that point, as a result of that transfer, they owned everything. They had the debt and the deed of trust on the property, and they owned the property. Are you trying to attach the label fraud to that transfer? I don't think we have to get all the way to fraud for purposes of the conduct situation. I don't think we've gone far enough kind of into that. I think it's a fraudulent transfer in that it left the prior owner essentially insolvent. It left it with all the liabilities and without the primary asset, and that's our problem. Are all the liabilities still attached to Palm Springs LLC but without the asset anymore? Yes. RE Palm Springs, the original owner, had all the liabilities but no asset anymore. There was no benefit to them. There was no— Was Palm Springs LLC? RE Palm Springs. It's RE Palm Springs and RE Palm Springs II are the two. Whatever. Okay. So it left them—there was no consideration. The transfer documents specifically say no consideration was paid. The debt wasn't reduced. And they were left then holding all the liabilities associated with all the liens, property secured, but not owning the property anymore. And that left them insolvent. That's what makes it a fraudulent transfer. The specific 363M issue in front of us is you just want to be able to get past mootness, correct? It's a safe haven provision. You say they shouldn't be able to have safe havens. Exactly. Because they knew. They knew. And that's the whole point. If we look at the purposes of 363M, and this Court talked about that a little bit in the shipbuilding case, the Sneeds Shipbuilding, the purpose is to bring people into the bankruptcy proceeding that they can be comfortable that they're buying the property. If they don't know about any other potential claims that could affect the ability to transfer the property, then they get it and they don't have to worry about it going forward. That is not—we don't have that issue here. HPS fully knew what was going on. They took the risk in closing on this credit bid sale that it could be attacked and reversed because they knew about the adversary proceeding. They knew that there were complaints about whether or not this was even part of the bankruptcy estate, and so they should not have that safe harbor. I think a lot, at least of my questions, but maybe all the questions so far, what's the limiting principle? And you cite Popp, Collier, Norton, none of the major treatises really tell us what the outer limit to adversity is. I think that's right, and I think it may just—the case law hasn't fully developed on that issue, but I think it's enough here that certainly if you're having a claim that would say the property doesn't belong in the bankruptcy estate, that should be sufficient. The other side, the district court, one of the district court's mistakes or errors we contend in analyzing this issue was the district court argued because we weren't arguing that we owned the property or asserting a possessory interest that belonged to my client as our construction, that that was therefore not sufficiently to be adverse. The other side has not quite taken that argument, but they want to argue you have to make a claim under color of title. I don't think you have to go that far, again, because it's not a matter of whether I'm arguing I get to possess it. It's a matter of does this purchaser know that there is a claim that affects the bankruptcy court's or the debtor's ability to transfer good title to the property? Is there a claim that it doesn't even belong in this 363 process? And because of that, we think that is sufficient under the adverse claim prong of the definition of good faith. And again, as Your Honor has noted, what we want then is to be able to go back to the district court and make our arguments about what we think was wrong with the credit bid process and the sale order because we don't think that that safe harbor should be there. Was there an effort, and it's probably all over your briefs, and I apologize I didn't pick up on it. Was there an effort to insist that the bankruptcy court decide the adversary first? We moved to stay the sale order and the credit bid order. Those were denied. And I apologize. The expenses to the monthly expenses that have been talked about on this asset and whatever else was going on, I can see the urgency in the bankruptcy court's mind to go ahead and decide that. Is there anything procedurally, statutorily wrong about having decided that before the adversary? Having decided the sale? The sale. I don't think . . . Are you saying practically or . . . excuse me, you're really saying you need to win the adversary and show that all this is wrong. But the district judge had other reasons to move ahead on approving this sale. And so I'm just wondering, is there anything in bankruptcy law that would not allow the district court to weigh it all that way? I mean the bankruptcy court to weigh it all that way. I think what I would say is procedurally, is there something wrong with the way the court approached it? I don't think so. But, again, for HPS, knowing full well what was out there, they don't get the safe harbor provision of 363M. The court can approve the sale. But because they were aware that there was a claim out there in the adversary and they elected to go ahead with the sale before the adversary was resolved, now they don't get the safe harbor of 363M. And, again, that's the sort of narrow scope of what we're asking. The bankruptcy court also doesn't get the benefit of why he proceeded that way, which is to stop the running of these expenses, to get the property in the hands of a good faith purchaser, which you say it wasn't. I do want to say on the expenses, there's really no evidence on that. They point to this number, but when you look at the record and we put this in our brief, there was nobody that testified as to what those expenses are. This is property that sits in desert in Palm Springs, California. The idea that it's a wasting asset, there really isn't evidence in the record to support that beyond their allegation that that was one of the reasons they had to hurry. I see my time has expired. You have much more to say, no doubt. I'll reserve my time. Thank you. May it please the Court. I'm Frank Wright, and I'm Counselor for Appley Hall, Palm Springs, LLC. I'm happy to just jump in on some of those questions that you all were throwing out. Goal of litigation, what is their goal here? I think that's an interesting fact. In the California case, a lot of parties involved. A lot of different M&M lean holders involved with this project because it shut down. A lot of people working on the construction of the hotel jumped in on the California case. Right. They're suing SR, the appellant, SR Construction, because it was the general contractor that quit the work. Who is the primary defendant in that case? I would say that SR Construction is the primary. They're the primary target because all the subcontractors are in privity with SR Construction, and they're suing them for nonpayment. But the aspect of the litigation there is they want to remove this property from the estate. I guess I have real difficulty seeing that's not an adverse claim. Well, what they're doing is they're suing on a contract claim. So they're not focused on the property. The property has been sold. They're focused on the property. Well, they want to avoid the transfer, and they want to foreclose. Well, SR Construction has brought up this avoidance of the transfer. They've done that in the bankruptcy case. They filed that adversary proceeding four days before the hearing on the credit bid right. And six days before the sale hearing. How long after the bankruptcy was filed was that? A couple months. Okay. You know, and if they— It's happening fast. Well, you know, if they—it did move—I mean, the bankruptcy moved quickly. And as the bankruptcy court found, it was a wasting asset. Money was being spent on it. It was not even halfway under construction in Palm Springs, California. Well, I guess, again, you can tutor me both, but that doesn't justify a safe haven provision. That may be justification to uphold the sale. But here we're saying they don't even get in the door. They get the benefit of being a good faith purchaser. And when I look at the very little law under 363M, first of all, the statute doesn't really say what adverse means. I don't see it in the treatises. But I do know someone like your client isn't what probably the code expected to protect because you're an insider, you're a creditor. We're a creditor. But there's other cases where you've had creditors exercise their credit bid rights. And what's the best case where they had notice of adverse litigation? What's your best case in that scenario? Well, if I go to the TMT procurement case, which was before ours. And obviously it went a different direction because in that case the asset that was talked about, the stock advantage, it wasn't property of the estate. It never was. That's different. But my takeaway legally there is the court just said, okay, if it's just an objection as on the appeal, that doesn't count. That's sort of the negative implication is actual adverse litigation would count just to deny the mootness. And as I've tried to wrestle back through this, how do we define adverse claim? Because it's really not defined. And the only way you've gotten to definitions of it is the NRAPOP case and the TMT procurement case where you see where courts have said, okay, well, if there's ownership. So when I go to that then I say, okay, they want to argue a broad definition of claims. Adverse limits that definition of claim. And what is adverse and what is it adverse to? And I think that's what's important for the court to decide. And what it has to be adverse to is the debtor's right to sell the property, the debtor's ownership. What if we agree saying this doesn't qualify, but then the state litigation resumes and they prevail? The state litigation will be affected by the outcome of this appeal. And so will the adversary proceeding. There's a pending motion to dismiss the adversary proceeding, but it's abated. Motion to dismiss? Motion to dismiss it. Because of the sale. Right. And there's, I mean, there are other appeals. I mean, there's been six. I mean, wouldn't it be, I don't know what the norm would be, but would it be normal just to wait to see what we do before granting that motion? Because it may need to be undone. Well, and I think when the courts wrestle with the issue of adverse claim, you have to look at adverse. Adverse to who? It can't be adverse to the lien holder. In other words, their argument that they somehow prime the senior lien holder here, even though they signed a subordination agreement, that cannot be the issue here because that doesn't affect the debtor's ability to sell. Debtor can sell regardless of who the lien holders are. So that's not the issue. The only issue that they've raised or tried to raise is this one about the transfer. And the transfer they're arguing about is you have a, this is a very common situation. You have a debt goes into fault, hotel stops work, and what does the senior lender do? Senior lender forecloses on the property or the senior lender takes back the property. In this case, took back the property. But there's all these other liens on the property. So the way you do that is you take a deed. It's not a true deed in lieu. A true deed in lieu is it satisfies the debt. In this case, they took the debt, they took the property subject to all existing liens. So their argument that there was some fraudulent conveyance just doesn't wash. And this is what the bankruptcy court found. The bankruptcy court looked at that and commented in her opinion that, wait a minute, we had a situation here where the transfer was subject to all the existing debt and the original borrower, and I forgot who asked the question, but it was Palm Springs. It was the original borrower. Right. Now, RE Palm Springs was the entity that was formed by the lender to take back title to the property. But then it converts it to HBS. And HBS then is the second bankruptcy. All right. So the actual bankruptcy was filed by RE Palm Springs II. RE Palm Springs II, which is subsequent to what, HBS II. No? Right. Right. And before, right, because the name before that was Hall, RE Palm Springs II. I guess so when you emphasize that it came with liens, it only came with liens until HPS II, I'm sorry, RP. Okay. I know this gets confusing. No, the moment that the title was taken from the borrower, the title was taken subject to all debt. Yes. The senior debt and all sub-debt and the debt of SR construction. And the borrower, Palm Springs LLC, was given back a profits participation. And the bankruptcy court made note of that as well. And that all of that is consideration because here's what the borrower got. The borrower got off the hook, pushed the property over and said, you know, senior lender, you deal with it. And the senior lender did deal with it and ultimately concluded that the only way to deal with it was file a bankruptcy proceeding and go through a very carefully done sale process. It was very careful. Okay. Mr. Wright, you're very familiar with this. It seems to me fundamental for your friends on the other side is that something happened in that transfer that altered their position, their relative position as the contractor with their ever liens they could impose versus the original or the construction lender. What would have been different about this case if these transfers that they're trying to undo and say this will keep the property from even being in the bankruptcy at all, what would be different about this case if it's Palm Springs LLC, whoever it was, just went into bankruptcy? What would be the relative position different about the position of your client versus the contractor? I don't think there would be any difference. In other words, if you undid the transfer right now, we'd try the adversary proceeding and the court concludes the property should go back to Palm Springs. Palm Springs is now the original borrower, holds the property again, subject to debt that's in default that it can't pay. But say it files bankruptcy. I think we have bankruptcy too is what we have because what else is it going to do? And then it's going to go through a sale process. We're just going to go through the whole thing again because nothing changed on their debt. Their debt has not changed whether it was with Palm Springs or whether it was with the debtor, i.e., Palm Springs, too. Their debt has not changed. But the position of the other side in this case is that, it seems to me, that that transaction which they want to undo changed the relative positions, the relative legal positions of them and whatever lien rights they may have versus other borrowers and basically versus your client. And you tell me there really isn't any difference in this. I mean, the problem is you have an adversary proceedings and things are supposed to be decided in the adversary proceedings. It seems to me that some of what we're talking about was decided in what the bankruptcy court did do here in looking at the arguments of each side and deciding to go ahead and deal with the—and approve the sale. But how much of what he is saying is wrong with this transaction was already addressed by the bankruptcy court in this analysis to go forward with the sale? Because he addressed—or she, maybe it is. The bankruptcy judge did address some of it. Judge Jernigan, I wouldn't say she made a lot of comments on it, but she certainly was aware of it, and she commented on several things. One was on their lien issue that there was a subordination agreement, and she moved on. On this transfer issue, she looked at the fact that it was subject to all the debt. And she found that was fair consideration. It's subject to the debt. And that the borrower would receive back a profit's participation interest, which is a little extra for the borrower. So the borrower didn't get washed out. They had a right to participate. Isn't that what the other side says was valueless, though? What now? Isn't that what the other side is saying was valueless? They're saying that because that's how things came out. But if the property had sold for more than the debt, then it would have been worth money. It just didn't happen. And you have to keep in mind, we're in a sale process taking place during the COVID time. This is in 2020 when this took place. And so values just weren't there. And so even though we ran an extensive sale process, and even though there were 2,000 parties that were shopped this property and 250 signed confidentiality agreements, at the end of the day, nobody was willing to bid more than the debt because everybody was looking at what have I got to pay for it and what have I got to spend to finish it. Well, looking at adverse claim, and all of this goes into the TMT is about ownership. That was just the facts of that case. And I don't read what we said in that case as relying on ownership. But we know that's good enough. And I am concerned that on your position, maybe it's not really your position, that that's required before there's an adverse claim. Can you give me some definition short of that that you think fits with the concept? But I do think my discussion with opposing counsel, I just think have competing liens can't be good enough. And I don't think the California case gets him anywhere. But I do think this transaction that we've been talking about, Palm Springs to some other company to who knows who else, and ultimately becomes bankrupt, that's different. And I'm just trying to figure out how that fits into what a proper definition of adverse claim is. Well, and I think you need to think too, Judge, about do we want a definition that is going to eliminate all buyers? Biases? All buyers. In other words, all potential bidders. Because if we're not careful, we end up with a definition where, think about it, this conveyance, it was a deed. So it's public record. So we have something that was done on public record. Everybody who could have wanted to bid on this hotel, even if SR Construction bid on the hotel, they would be aware of that. Okay. So if we're not careful, we end up with a definition that is so broad that nobody can be a good faith purchaser. The definition I was playing with is, one, the claim needs to have some merit to it. In other words, otherwise we're going to have everybody out there that wants to torpedo a bankruptcy sale filing some adversary proceeding and just asserting whatever they want to. It's unwinding in the context of a bankruptcy sale where the purchaser is the creditor, right? That is the limited orbit. And the question is just do they get the benefit of the safe harbor provision, right? It's not unwinding the sale yet. But the definition they would go with would apply to more than just a lender who's a bidder. It would apply to anybody who's a bidder. And so I think you have to, one, you've got to have some qualifier and say there has to be some merit to the claims. And the claims have to be adverse. Who would decide if it has merit? Like Judge Jernigan here, she would have been deciding that? Right. At the time of the sale, you would look at the claim and decide does it have some merit? Right. Or is it a frivolous claim? Well, that's a little problematic. I mean, she'd be saying the state litigation that's been stayed is frivolous? Well, but she has the adversary as the one that's asserting this claim. It's the bankruptcy adversary. And she could comment on the bankruptcy adversary like she did because she took a look at it and she said, I don't find that it's fraudulent conveyance. One, there's no intent to interlay the fraud creditors when you're taking the property subject to all debt. And two, she found that there was consideration because it was taken subject to all debt. Did she ever say in the record? It's a three-day hearing. Did she ever say, I don't find there's merit to the state litigation that's been stayed? Well, the state litigation, again, the state litigation involved the M&M lien rights. And her comment with respect to the state litigation and their assertion of priority, which is what they were doing, is, boy, I'm faced with a subordination agreement, and I have no other evidence presented by SR Construction on this issue. So based on the fact that they signed a subordination agreement, I don't give any weight to their claim that they're somehow prior to the senior lender. They signed an agreement and subordinated themselves to the dealer trust? Right. They subordinated themselves to the senior lender. Okay. You were starting to say what else you might include. We distract you. Well, I think it has, again, I come back to the same thing I said before, and it has to be adverse to the debtor's claim of ownership. It's not enough for it to be adverse to the lender's claims, their liens, and so on, because that's not what the debtor is asserting. The debtor is saying, I own the property. I have a right to sell it. So whatever we define adverse claim, personally, if we could do it all over again, I'd say take out that, because by putting adverse claim in the definition of good faith purchaser, what you've done is you've come up with an element that applies to all buyers, whereas when you have the conduct definition, conduct is specific to the purchaser. And, therefore, you can have a purchaser who doesn't meet the conduct definition, and you can have another purchaser on the same property who does meet it. But we can't read and write the code. I understand that. But it's not in the code. This is all court-related, I mean, court-based. Okay? So it's court that has decided that the way we're going to define good faith purchaser is you have to take it with good faith, for value, and without knowledge of adverse claims. And I'm just saying if we could go back in time to remove that, it would simplify this a lot, especially since courts have yet to define what adverse claim is. But if we're not going to go back in time, I'm trying to come up with a definition that I think can still work here, and I think it comes down to defining what adverse means and who is it adverse to. Someone with a right of first refusal? Now, in bankruptcy courts, it's been very clear that you can sell free and clear of a right of first refusal. And, in fact, too, another thing that's of interest here is, you know, this sale was under 363B and F. And under F, the court can approve a sale that is free and clear of claims in dispute. Well, effectively, SR Construction is arguing that, well, if you have knowledge of those claims that you're getting to buy free and clear of, then you're not in good faith. And that doesn't make sense. That's nonsensical that, well, it just postpones finality, but does it not make sense in terms of it'll then get appellate review of the sale? There'll be a second look at what the bankruptcy court determined wasn't collusive or fraudulent. That's all it gets. It gets that, but what it's going to also do is it is going to drive off bidders of properties. When people realize that they cannot get the protections of 363M, because if you tell a bidder there is nothing you can do to become a good faith purchaser, if you have knowledge of anything that was filed a public record, like an adversary proceeding, a deed conveying the property to the debtor, if you have knowledge of that because it's a public record, you cannot be a good faith purchaser. Who's going to bid? Who's going to bid? I know I'm about out of my time. I did want to make note, too, though, and we didn't touch on standard of review. Nobody's asked about the standard of review, and so I may just leave that one alone. I think the court can do exactly what the district court did and what was done in TMT procurement and find that under either standard it should be affirmed. But I would note that the bankruptcy court, in looking at all of this, was dealing with not only the two hearings on the credit bid and also the sale hearing, but was also dealing with, she had heard all the prior record, the motion to transfer the case that was filed by SR Construction to transfer it to California and appeal from that one, the motion to dismiss the case. I know my time's up. Thank you, Judge. Appreciate it. Thank you. I want to start with this proposed definition they've come up with of adverse. I think what I wrote down is adverse to the debtor's ownership. Our claim is. That's the whole point. Our claim is the debtor doesn't own this property properly,  So even under the test that HPS has proposed to this court, our claim that the initial transfer was a fraudulent transfer is an adverse claim. And I think. What about his final statement, which was this rule would then apply to outside bidders too. Anyone who finds your lien is aware, is on notice of an out. Again, not our lien, but our claim that this does not even belong in the 363 process. It becomes knowledgeable of the litigation in state court. Again, I think that goes back to Congress's choice on what to do here. When you say we're going to give a safe harbor to someone who buys without knowing about this stuff, then they say, but if you do know about this stuff, you don't get the safe harbor. That's the balance that Congress struck in 363M. They have finality, and finality is an important concept in bankruptcy, and I understand that. But they've put a limit on it. That we are not going to give someone the safe harbor if they know that there is this claim out there. I think it makes perfect sense what this court's done in TMT and what other circuits have done in including this definition of knowledge of adverse claims as part of good faith. If you look at what's a good faith purchaser outside of bankruptcy, it's someone who buys the property without knowing that somebody else thinks they own it or without knowing that there's a claim out there that would make it so the person they're buying from can't transfer good title. So if there is that status out there, if there is that knowledge out there, that we have a claim that this property isn't even properly in the bankruptcy estate, then you don't get the safe harbor, and that's all it is. It delays fail. Let's say you prevail. It isn't moved. You then win. It's unwound. Does HPS 2 become a revitalized debtor somehow? Well, I think if you unwind it, you're going to have to do the whole bankruptcy. I mean, at that point you've got an issue because RE Palm Springs 2, which was HPS 2, can't own the property anymore. It goes back to the original owns. And then the question was what difference would that make, and my opponent said none. It would make a lot of difference. First of all, HPS would be a creditor. They wouldn't be creditor and owner of the property at the same time. There would have been a trustee appointed. We wouldn't have a chief restructuring officer that got appointed here. And HPS would have had a whole lot less control over the process of the bankruptcy and the sale if they were just simply a creditor and not also the owner of the prime asset that their lien attaches to. So it would make a big difference. I'm trying to see how that played out in this case. You've heard my, at least somewhat, reluctance on just saying a battle between priorities of liens may not be enough. You still would have had a bankruptcy. You still could have had ultimately a sale. I'm trying to—I still don't have my mind around why your position is worse off in what happened than it would have been under the scenario you just laid out. The sale process would have been different. HPS, as just the owner of the note of a lien on the property, deed of trust on the property, would have been in a completely different position than what they are, which is the owner of the deed of trust and the owner of the property that they're trying to sell. So at that point they're in a different position as far as their ability to control what's going on. There's going to be a different position as to is there a trustee appointed that's going to have a different sale process. I think the sale process unfolds completely differently if HPS isn't in charge of it, which is essentially what happened. But when we look at the bidding process, the bankruptcy judge did scrutinize that. I know you disagree with the conclusions, but that it was a robust bidding process with incredible interest. I think one witness has described it as that. Well, so here's what I'd say on that. The first thing is they have taken issue with how we've described it. I'd point the court to page 13 to 16 of our reply brief. We have a bullet list of everything we say was a problem in this sale with citations to the record. What's interesting is they don't deny any of that. The conduct they don't deny. They did the things we said they did. They just say it's okay, that the bankruptcy court looked at it and said no problem. Our argument to the court is that is error. Remind me, just because you know quickly, but those bullet points, is there a salient fact that wasn't disclosed by them to the bankruptcy judge? I don't think so. And what would you point to as the most evidence of collusion among bidders? I think probably the key thing is this. The chief restructuring officer that HPS appointed to handle all of this did absolutely nothing to verify the amount of the debt. It's a credit bid. So they came in and said our debt is $32 million, and we're bidding that to buy the property. And on the stand, Mr. Kim, the CRO, said I don't know if that's right. I assume it is. They told me it is. He did nothing to verify it, didn't go back and look at check stubs, didn't look for anything to audit the amount of that debt. And I think that's the key thing. And, again, that goes to the idea of collusion. He just took the debtor's word for it that that's what they were owed, and, therefore, they could bid that as the bid price for the property. All right, counsel. Thank you both. Very helpful. Some of you, counsel, bring us more challenging cases than others. We appreciate it. I'll call the final.